IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| | : |
| IN RE: YASMIN AND YAZ (DROSPIRENONE) : MARKETING, SALES PRACTICES AND RELEVANT PRODCUTS LIABILITY LITIGATION | 3 :09-md-02 1 00-DRH-PMF MDL NO. 2100 Judge David R. Herndon |
| | : |
| | : |
| TIANA MILLER, SABRINA MATTHEWS, JACINDA C. JORDAN, EDITH CHAIREZ, | : : |
| Plaintiffs, | |
| Vs. | : COMPLAINT AND JURY DEMAND |
| | Case No: |
| BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER SCHERING PHARMA AG, | : : |
| Defendants. | |
| | : |

## COMPLAINT

Plaintiffs Tiana Miller, Sabrina Matthews, Jacinda C. Jordan, and Edith Chairez ("Plaintiffs"), as individuals, file this Complaint seeking judgment against Defendants Bayer Healthcare Pharmaceuticals, Inc. and Bayer Schering Pharma AG, for injuries and damages caused by their ingestion of Yaz, Yasmin, and/or Ocella (generically as drospirenone and ethinyl estradiol) a combination oral contraceptive prescription medication and, in support thereof, state and allege as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Tiana Miller is a resident of the State of Illinois.  Plaintiff Sabrina Matthews is a resident of the State of Texas.  Plaintiff Jacinda C. Jordan is a resident of the State of Texas. Plaintiff Edith Chairez is a resident of the State of New Mexico.

2.      Plaintiff Tiana Miller was prescribed and purchased and ingested the prescription medication known as Yaz and/or Yasmin (herein after Yaz/Yasmin), and suffered an injury, specifically but not limited to menorrhagia and blood clots, as a proximate and direct result of using Yaz/Yasmin, which was designed, developed, marketed, advertised and distributed by Defendants herein.  Plaintiff Sabrina Matthews was prescribed and purchased and ingested the prescription medication known as Yaz and/or Yasmin (herein after Yaz/Yasmin), and suffered an injury, specifically but not limited to mitral valve prolapsed, heart palpitations, and gallbladder failure, as a proximate and direct result of using Yaz/Yasmin, which was designed, developed, marketed, advertised and distributed by Defendants herein.  Plaintiff Jacinda C. Jordan was prescribed and purchased and ingested the prescription medication known as Yaz and/or Yasmin (herein after Yaz/Yasmin), and suffered an injury, specifically but not limited to deep vein thrombosis, gallbladder failure, became pregnant while taking the pill and her son was born with atrial septal defect, as a proximate and direct result of using Yaz/Yasmin, which was designed, developed, marketed, advertised and distributed by Defendants herein.  Plaintiff Edith Chairez was prescribed and purchased and ingested the prescription medication known as Yaz and/or Yasmin (herein after Yaz/Yasmin), and suffered an injury, specifically but not limited to high blood pressure and gallbladder failure, as a proximate and direct result of using Yaz/Yasmin, which was designed, developed, marketed, advertised and distributed by Defendants herein.

3.      Plaintiffs allege an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

4.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey, 07470. Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex, Inc. (formally known as Berlex Laboratories, Inc.). Bayer Healthcare Pharmaceuticals, Inc. is the U.S. based pharmaceutical unit of Schering AG and is a division of Defendant Bayer AG.

5.      Berlex, Inc was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yaz and Yasmin. At all relevant times, Berlex Laboratories, Inc. conducted and sustained regular business in the United States by selling and distributing its products in the United States and engaged in substantial commerce and business activity in the United States. As a result of the acquisition, Defendant Bayer Healthcare Pharmaceuticals, Inc. is obligated for its predecessor's liabilities.

6.      At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. was/is engaged in the business if researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yaz and Yasmin. At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted and sustained regular business in the United States by selling and distributing its products in the United States and engaged in substantial commerce and business activity in the United States.

7.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of the approved New Drug Application ("NDA") for Yaz.

8.      Defendant Bayer Schering Pharma AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of Germany, having a principal place of business at Mullerstrasse 178, 13353 Berlin, Germany.

9.      Defendant Bayer Schering Pharma AG, is a corporate successor of Schering AG.

10.     Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

11.     Defendant Bayer Schering Pharma AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburg, Pennsylvania 15205.

12.     Defendant Bayer Schering Pharma AG is the current owner of the patents(s) relating to the prescription drugs Yaz and Yasmin.

13.     Defendants Bayer Healthcare Pharmaceuticals, Inc. and Bayer Schering Pharma AG, are collectively referred to herein as "Bayer", "Bayer Defendants," or "Defendants."

14.      This court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

15.     Venue is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

16.     Plaintiffs bring this case against Defendants for damages associated with their ingestion of the pharmaceutical drug Yaz/Yasmin (ethinyl estradiol and drospirenone), an oral

contraceptive designed, manufactured, marketed, distributed by Defendants. Specifically, as a direct result of their use of Yaz/Yasmin, (a) Plaintiff Tiana Miller suffered severe physical and personal injuries, including but not limited to menorrhagia and blood clots. (b) Plaintiff Sabrina Matthews suffered severe physical and personal injuries, including but not limited to mitral valve prolapsed, heart palpitations, and gallbladder failure. (c) Plaintiff Jacinda C. Jordan severe physical and personal injuries, including but not limited to deep vein thrombosis, gallbladder failure, became pregnant while taking the pill and her son was born with atrial septal defect. (d) Plaintiff Edith Chairez suffered severe physical and personal injuries, including but not limited to high blood pressure and gallbladder failure.

## Bayer's Combined Oral Contraceptives-Yaz/Yasmin

17.     Yaz/Yasmin is birth control pills manufactured and marketed by Defendants. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component. Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

18.     Yaz and Yasmin were approved by the Food and Drug Administration for marketing in 2006 and 2001, respectively.

## Yaz/Yasmin contain a "Fourth Generation" Progestin.

19.     The estrogen component in Yaz/Yasmin is known generically as ethinyl estradiol. The progestin component is known as drospirenone. Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

20.     Yaz and Yasmin are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

21.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of both control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

22.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of estrogen, ethyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

23.     During the 1990's new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

24.     Yaz and Yasmin contain the same estrogen component, ethyl estradiol, which has been used in the lower dose birth control pills for decades.

25.     However, drospirenone is a new type of progestin and is considered a "fourth

generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yaz/Yasmin marketed under the trade name Ocella.

26.     Since drospirenone is new, there is insufficient data available to support its safe use, particularly compared with second generation progestins. In fact, studies performed prior to FDA approval indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

27.     A dangerous effect of drospirenone is that it acts as a diuretic, which can cause an increase in the potassium levels in the blood. This can lead to a condition known as hyperkalemia if the potassium levels become too high. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia. If left untreated, hyperkalemia can be fatal. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke. The diuretic nature of drospirenone also attributes to blood clot formation elsewhere in the body.

28.     As additional dangerous effect of drospirenone is that in acting as a diuretic, it affects the kidney by blocking the aldosterone receptors. Aldosterone is a hormone that increases the reabsorption of sodium and water and the secretion of potassium in the kidneys, resulting in dehydration. Dehydration, may lead to the formation of gall stones. Blocking the aldosterone receptor may also increase the levels of cholesterol in the blood. An excess of cholesterol, calcium and phosphate in the gallbladder reduces the gallbladder emptying and results in gallbladder disease.

29.     Upon information and belief, Defendants knew or should have known that the use of

drospirenone in Yaz/Yasmin causes arrhythmia, cardiac arrest/heart attack, intracardiac thrombus, pulmonary embolism, deep vein thrombosis, stroke, and/or gallbladder disease.

30.     During the brief time that Yaz/Yasmin has been sold in the United States, hundreds of reports of injury and deaths have been submitted to the FDA in association with Defendants' products.

31.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

32.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolsim where Yasmin was suspected as the cause, including two deaths.

33.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yaz/Yasmin had been filed with the FDA.

34.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

35.     Some deaths reported occurred in women as young as 17 years old.

36.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yaz/Yasmin.

37.     Two recent studies, released in August 2009, have found significantly increased risks of harm associated with Yaz/Yasmin over other types of birth control pills. The first study assessed the risk of developing venous thrombosis in women who use oral contraception. The women

ranged in age from 15 to 49 and had no history of heart disease or any malignant condition. The

study found that of the 3.3 million women taking oral contraceptives, there were 4,213 venous

thrombotic events. Of this total, 2045 occurred in women using drospirenone oral contraceptives.

The study concluded that "oral contraceptives with…drospirenone were associated with a

significantly higher risk of venous thrombosis than oral contraceptives with levonogesterl."

Lidegard, et al., Hormonal contraception and risk of venous thromboeolism: national follow up

study, THE BRITISH MEDICAL JOURNAL 2009, 330:2921.

38.     The second study found that Yaz/Yasmin users have a twice the risk of a clotting event

than users of birth control pills that contain levonorgestral. Vandenbroucke, et al., The venous

thrombotic risk of oral contraceptives, effects of estrogen dose and progestin type: results of the

MEGA case-control study. THE BRITISH MEDICAL JOURNAL 2009, 339:B2921.

39.     Despite the wealth of scientific evidence, Defendants have not only ignored the

increased risk of the development of the aforementioned injuries associated with the use of

Yaz/Yasmin, but they have, through their marketing and advertising campaigns, urged women to

use Yaz/Yasmin instead of birth control pills that present a safer alternative.

### Over-Promotion of Yaz/Yasmin

40.     Defendants market Yaz/Yasmin as providing the same efficacy as other birth control pills

in preventing pregnancy, but with additional benefits.

41.     However, because Yaz/Yasmin contains the fourth generation progestin drospirenone,

they present additional health risks not associated with other birth control pills.


42.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories

promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin,

and the difference a little chemistry can make."

43.      In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin® is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"


44.      The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

45.      More recently, Defendants advertised that its product Yaz/Yasmin was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."


46.      Defendants also advertised that Yaz/Yasmin contained the added benefit of preventing or reducing acne.

47.      In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz/Yasmin for medical conditions beyond the limits of the FDA approval, and adding that "Yaz/Yasmin has additional risks because it contains the progestin, Drospirenone….which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

48.     The FDA further warned in its October 3, 2008 letter that Yaz/Yasmin "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

49.     Indeed, the FDA felt Defendants' over-promotion was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz/Yasmin advertisements regarding acne and premenstrual syndrome.

50.     Bayer ultimately agreed to spend at least $20,000,000.00 on corrective TV advertisements and to submit all Yaz/Yasmin advertisements to the FDA for advanced screening for the next six years.

### Plaintiffs' Use of Yaz/Yasmin and Resulting Injuries

51.     As a result of Defendants' claims regarding the effectiveness, Safety, and benefits of Yaz/Yasmin, including Defendants' claims regarding Yaz/Yasmin's reduction or prevention of acne, Plaintiffs' medical provider prescribed and Plaintiffs began using Yaz/Yasmin.

52.     As a direct and proximate result of using Yaz/Yasmin, Plaintiffs suffered severe physical and personal injuries.

53.     Prior to Plaintiffs' use of Yaz/Yasmin, Defendants knew or should have known that use of Yaz/Yasmin created a higher risk of severe physical and personal injuries than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was a unreasonable dangerous to consumers.

54.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz/Yasmin, Defendants failed to warn Plaintiffs and/or her health care providers of said serious risks before they used the product.

55.     Had Plaintiffs and/or their health care providers known the risks and dangers associated

with Yaz/Yasmin, they would not have used Yaz/Yasmin and would not have suffered severe physical and personal injuries.

56.     As a direct and proximate result of her use of Yaz/Yasmin, Plaintiffs suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her severe physical and personal injuries.

57.     As a direct and proximate result of Plaintiffs' use of Yaz/Yasmin, Plaintiffs have suffered and will continue to suffer pecuniary losses.

## FIRST CAUSE OF ACTION
### Products Liability Defective Manufacturing

58.     Plaintiffs incorporate by reference, as fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

59.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz/Yasmin.

60.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

61.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specification such that they were unreasonable dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

62.     As a direct and proximate result of Plaintiffs' use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs suffered personal injuries, economic and non-economic damages.

63.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

### SECOND CAUSE OF ACTION
### Product Liability Design Defect

64.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

65.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz/Yasmin.

66.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed and/or placed into the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

67.     The Yaz/Yasmin birth control pills manufactured and supplied by Defendants were defective in design or formulation in that, when they left the hands of the Defendants, the foreseeable risks of the products exceeded the benefits associated with its design or formulation, or they were more dangerous than an ordinary consumer would expect.

68.     The foreseeable risks associated with the design or formulation of the Yaz/Yasmin birth control pills, include, but are not limited to, the fact that the design or formulation of Yaz/Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

69.     Additionally, Defendants advised consumers and the medical community that Yaz/Yasmin contained the same safety profile as other oral hormonal birth control pills. However, Defendants failed to adequately test the safety of Yaz/Yasmin versus other oral hormonal birth control pills.

70.     Had Defendants adequately tested the safety of Yaz/Yasmin versus other oral hormonal birth control pills and disclosed the results to the medical community or the public, Plaintiffs would not have used, and her physician would not have prescribed, Yaz/Yasmin.

71.     As a direct and proximate result of Plaintiffs' use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs suffered personal injuries, economic and non-economic damages, including pain and suffering.

72.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION
### Products Liability Defective and/or Inadequate Warning

73.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

74.     The Yaz/Yasmin birth control pills manufactured and supplied by Defendants were defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

75.     The Yaz/Yasmin birth control pills manufactured and supplied by Defendants were defective due to inadequate post-marketing warning or instruction and were unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yaz/Yasmin, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

76.     As a direct and proximate result of Plaintiffs' use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs suffered personal injuries, economic and non-economic damages.

77.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

**FOURTH CAUSE OF ACTION**
**Negligence**

78.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

79.     Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz/Yasmin into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events. Defendants also had the duty to ensure that all communications between consumers, including Plaintiffs and their healthcare providers were truthful.

80.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz/Yasmin into interstate commerce and in communications regarding Yaz/Yasmin in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

81.     Defendants further failed to exercise ordinary care in the labeling of Yaz/Yasmin in that Defendants failed to issue to consumers and/or their health care providers adequate warnings of

the risk of serious bodily injury or death due to the use of Yaz/Yasmin.

82.     Plaintiffs and their health care providers reasonably relief, to Plaintiffs' detriment, upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product, including that Yaz/Yasmin was as safe or safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

83.     Despite the fact that Defendants knew or should have known that Yaz/Yasmin posed a serious risk of harm to consumers, Defendants continued to manufacture and market Yaz/Yasmin for use by consumers.

84.     Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

85.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered personal injuries, economic and non-economic damages.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation and/or Fraud

86.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

87.     Defendants are the manufactures, designers, distributors, sellers or suppliers of Yaz/Yasmin and made representations to Plaintiffs and their health care providers regarding the character or quality of Yaz/Yasmin for guidance in their decision to select Yaz/Yasmin.

88.     Specifically, Defendants represented that Yaz/Yasmin was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

89.    Defendants' representations regarding the character or quality of Yaz/Yasmin were untrue.

90.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz/Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

91.    Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safe or safer than, and as effective or more effective than, other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

92.    In supplying the false information, Defendants failed to exercise reasonable care in obtaining or communicating information to Plaintiff and her health care providers.


93.    Plaintiffs and their health care providers reasonably relied upon to Plaintiffs' detriment, Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiffs reasonably relief upon Defendants' misrepresentations to her and/or her health care providers that Yaz/Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.


94.    As a direct and proximate result of Defendants' fraudulent misrepresentations or omissions, Plaintiffs suffered personal injuries and economic and non-economic damages, including pain and suffering.

95.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious

actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION
### Breach of Express Warranty

96.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

97.    Defendants expressly warranted that Yaz/Yasmin was a safe and effective prescription contraceptive.

98.    The Yaz/Yasmin birth control pill manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to consumers when taken in recommended dosages.

99.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

100.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty

101.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

102.    At the time the Defendants designed, manufactured, marketed, sold, and distributed Yaz/Yasmin for use by Plaintiffs, Defendants knew of the use for which Yaz/Yasmin was intended and impliedly warranted the product to be of merchantable quality and for safe for such

use.

103.    Plaintiffs reasonably relief upon the skill and judgment of the Defendants as to whether Yaz/Yasmin was of merchantable quality and safe for its intended use and upon the Defendants' implied warranty as to such matters.

104.    Contrary to such implied warranty, Yaz/Yasmin was not of merchantable quality or safe for its intended use, because the product was unreasonably dangerous as described above.

105.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiffs have suffered harm, damages and economic loss and will continue to suffer such harm, damages, and economic loss in the future.

106.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

**EIGHTH CAUSE OF ACTION**
**Violation of the Deceptive Trade Practices Act**

107.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

108.    Defendants violated the Deceptive Trade Practices Act ("DTPA") of the state in which Plaintiffs reside by the use of false and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion, and sale of Yaz/Yasmin.


109.    Defendants communicated the purported benefits of Yaz/Yasmin while failing to disclose the serious and dangerous side effects related to the use of Yaz/Yasmin with the intent that consumers, like Plaintiffs, and their healthcare providers rely upon the omissions and misrepresentations and purchase or prescribe Yaz/Yasmin, respectively.

110.    As a result of violating the DTPA, Defendants caused Plaintiffs to be prescribed and to use Yaz/Yasmin, causing severe injuries and damages as previously described herein.

111.    As a result of Defendants' violations of the DTPA, Plaintiffs seek all available damages and costs as provided by the Act.

## NINTH CAUSE OF ACTION
### Unjust Enrichment

112.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

113.    As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase and implementation of Yaz/Yasmin by Plaintiff.

114.    Defendants have voluntarily accepted and retained those profits and benefits, derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by Defendants or that Plaintiffs as a reasonable consumer, expected to receive.

115.    By Virtue of the conscious wrongdoing alleged above, Defendants have been unjustly enriched at the expense of Plaintiffs, who is entitled in equity, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## PUNITIVE DAMAGES

116.    At all times relevant hereto, Defendants actually knew of the defective nature of Yaz/Yasmin as set forth herein, and yet continued to design, manufacture, market, distribute, and sell Yaz/Yasmin so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by Yaz/Yasmin. Defendants' deceptive conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, malice, recklessness, and/or willful and intentional disregard for the safety and rights of Plaintiffs, as well as the general public and/or consumers of Yaz/Yasmin. Plaintiffs, therefore, is entitled to punitive damages for such conduct.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

117.    The running of any statue of limitation has been tolled by the reason of the Defendants' fraudulent conduct. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' healthcare providers the true risks associated with taking Yaz/Yasmin.

118.    As a result of Defendants' actions and or omissions, Plaintiffs and Plaintiffs' healthcare providers were unaware, and could not reasonably have known or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the Defendants' acts and omissions.

## JURY DEMAND

119.    Plaintiffs hereby request a trial by jury on all issues so triable in this case.

## 15.
## PRAYER FOR RELIEF

120.    Plaintiffs pray that upon final trial of this matter, judgment be entered in favor of Plaintiffs in such aggregate sum as will fairly and reasonable compensate Plaintiffs for damages arising out of Defendants' conduct as described herein.  The conduct of Defendants, as alleged

herein, was a direct, proximate and producing cause of the damages to Plaintiffs and the following general and specific damages, for which Plaintiffs ask an award:

    (A)    For general damages according to proof;

    (B)    For special damages according to proof;

    (C)    For punitive and exemplary damages according to proof;

    (D)    For prejudgment and post-judgment interest as allowed by law;

    (E)    For costs of suit incurred herein; and

    (F)    For such other and further relief as this court may deem just and proper.

Respectfully submitted,

**FEARS | NACHAWATI LAW FIRM**

**/s/** Majed Nachawati_____
Majed Nachawati
Texas State Bar Number 24038319
4925 Greenville Ave., Suite 715
Dallas, Texas 75206
Telephone:  (214) 890-0711
Facsimile:  (214) 890-0712
mn@fnlawfirm.com

**ATTORNEY FOR PLAINTIFF**